UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ROGELIO BERTO MENDEZ,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM, *et al.*,<br><br>Respondents. | Case No. 2:25-cv-02062-RFB-MDC<br><br>**ORDER** |

Before the Court is the (ECF No. 2) Emergency Motion for a Temporary Restraining Order ("TRO") by Petitioner Rogelio Berto Mendez. For the following reasons, the Court converts this Emergency Motion into a Motion for Preliminary Injunction and **GRANTS** the Motion.

**I.   INTRODUCTION**

This case is one of a growing number before this court challenging the federal government's new policy of mandatory detention of all noncitizens charged with entering the United States without inspection.[1] The policy is based on a new interpretation of the Immigration and Nationality Act (INA), specifically 8 U.S.C. § 1225(b)(2)(A), as mandating the detention of all undocumented individuals during the pendency of their removal proceedings, which can take

---

[1] This Court has already granted petitioners relief in twelve similar challenges. See, e.g., Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792 (D. Nev. Sept. 5, 2025); Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); Roman v. Noem, No. 2:25-CV-01684-RFB-EJY, 2025 WL 2710211 (D. Nev. Sept. 23, 2025); Carlos v. Noem, No. 2:25-CV-01900-RFB-EJY, 2025 WL 2896156 (D. Nev. Oct. 10, 2025); E.C. v. Noem, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); Perez Sanchez v. Bernacke, No. 2:25-CV-01921-RFB-MDC (D. Nev. Oct. 17, 2025); Aparicio v. Noem, No. 2:25-CV-01919-RFB-DJA, 2025 WL 2998098 (D. Nev. Oct. 23, 2025); Dominguez-Lara v. Noem, No. 2:25-CV-01553-RFB-EJY, 2025 WL 2998094 (D. Nev. Oct. 24, 2025); Bautista-Avalos v. Bernacke, 2:25-CV-01987-RFB-BNW (D. Nev. Oct 27, 2025); Arce-Cervera v. Noem, No. 2:25-CV-01895-RFB-NJK, 2025 WL 3017866 (D. Nev. Oct. 28, 2025); Alvarado Gonzalez v. Mattos, No. 2:25-CV-01599-RFB-NJK (D. Nev. Oct. 30, 2025); Rodriguez Cabrera v. Mattos, No. 2:25-cv-01551-RFB-EJY (D. Nev. Nov. 3, 2025).

months or years. Under this interpretation, prolonged detention is mandated no matter how long a noncitizen has resided in the country, and without *any* due process to challenge whether the government has a legitimate interest in their detention.

This sweeping new policy, which the Department of Homeland Security (DHS), in conjunction with the Department of Justice (DOJ), adopted on a nationwide basis on July 8, 2025,[2] subjects *millions* of undocumented residents to prolonged detention without the opportunity for release on bond, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents under 8 U.S.C. § 1226(a).[3] On September 5, 2025, the Bureau of Immigration Appeals (BIA) issued a precedential decision adopting this new interpretation of the government's detention authority under the INA. See Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) ("Hurtado"). After Hurtado, immigration judges no longer have authority to hear bond requests or grant bond to noncitizens present in the U.S. who entered without inspection. Id.

This Court has previously found the government's new statutory interpretation of the INA is incorrect and unlawful, as have the majority of district courts across the country[4] when faced with the same question. See Maldonado Vazquez v. Feeley, 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025) (finding the statutory text and "canons of statutory interpretation, including the legislative history, regulations, and long history of consistent agency practice, as well as the doctrine of constitutional avoidance" demonstrate the government's new reading of § 1225(b)(2)(A) is likely unlawful); see also, e.g., Rodriguez v. Bostock, No. 3:25-CV-05240-TMC, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025) ("Every district court to address this question has concluded that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice.")

---

[2] See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX.

[3] See Kyle Cheney & Myah Ward, Trump's new detention policy targets millions of immigrants. Judges keep saying its illegal., Politico (Sept. 20, 2025 at 4:00 p.m. EDT), https://www.politico.com/news/2025/09/20/ice-detention-immigration-policy-00573850, https://perma.cc/L686-E97L.

[4] Kyle Cheney, More than 100 judges have ruled against the Trump admin's mandatory detention policy, Politico (Oct. 31, 2025 at 4:29 p.m. EDT), https://www.politico.com/news/2025/10/31/trump-administration-mandatory-detention-deportation-00632086, https://perma.cc/Z8QY-VHXM.

(collecting cases).

Petitioner challenges Federal Respondents' application of this policy to prolong his detention for months—despite an immigration judge's finding on July 17, 2025 that Petitioner's detention is unjustified and that he should be released on bond—as unlawful under the INA and a violation of due process. Federal Respondents assert that Petitioner's ongoing detention is statutorily authorized by 8 U.S.C. § 1225(b)(2) and does not offend due process. For the reasons set forth below, the Court finds that Petitioner's detention is unlawful under the INA and violates his due process rights. The Court thus orders his immediate release subject to the bond conditions imposed by the immigration judge.

## II. PROCEDURAL HISTORY

On October 23, 2025, Petitioner Rogelio Berto Mendez, who is currently detained in ICE custody at Nevada Southern Detention Center, filed his 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus against Respondents Kristi Noem, in her official capacity as Secretary of DHS, Pamela Bondi, in her official capacity as Attorney General of the United States, Thomas Feeley, in his official capacity as Field / Acting Field Director of the Salt Lake City Field Office of Detention and Removal Operations, ICE, DHS, and John Mattos, in his official capacity as the warden at Nevada Southern Detention Center. ECF No. 1. Petitioner concurrently filed the instant Emergency Motion for TRO. ECF No. 2.

On October 23, 2025, this case was transferred to the undersigned judge as related to two pending putative class actions, Case Numbers 2:25-cv-01542-RFB-EJY and 2:25-cv-01553-RFB-BNW. ECF No. 6. On October 27, 2025, counsel for Respondents Noem, Bondi, and Feeley filed a notice of appearance. ECF No. 9. Counsel for Respondent Mattos filed a notice of appearance on October 28, 2025. ECF 12. On October 29, 2025, Respondents Noem, Bondi, and Feeley filed their Opposition to the Motion, and Respondent Mattos joined the Opposition. ECF No. 14-15. Petitioner filed his Reply on October 30, 2025. ECF No. 16.

The Court's Order follows.

## III. BACKGROUND

The Court fully incorporates by reference the statutory and regulatory background relevant to the government's challenged mandatory detention policy, including DHS's use of the C.F.R. § 1003.19(i)(2) automatic stay to enforce that policy, set forth in its ruling in Maldonado Vazquez, 2025 WL 2676082, at *6-11.

The Court makes the following findings of fact relevant to Petitioner. Petitioner is a 41-year-old noncitizen who entered the U.S. without inspection in or around 2002, and since then, has continuously resided in the country for over twenty years. Petitioner and his life partner have six children, ages 21, 20, 18, 14, 10, and 9, all of whom are U.S. citizens. He also has a 7-month-old U.S. citizen grandchild, who he is very close to. Petitioner provides financial, medical, and emotional support to his oldest daughter, who has suffered from juvenile idiopathic arthritis since age 12 and requires consistent medical care. Prior to his detention, Petitioner was employed in the construction industry for many years, including employment with Blackstone Construction and Hacienda Builders; he was the primary breadwinner for his household.

Petitioner has criminal convictions from 2004 and 2021; however, these offenses were not violent felonies, nor did they involve controlled substances. On June 16, 2025, Petitioner was detained by ICE, and DHS initiated removal proceedings by issuing a Notice to Appear. ICE classified Petitioner as "an alien present in the U.S. who has not been admitted or paroled," rather than an "arriving alien," and charged him as inadmissible and subject to removal under 8 U.S.C. § 1182(a)(6)(A)(i), to be held in detention pending a hearing before an immigration judge. ECF No. 2-1. He has been detained at Nevada Southern Detention Center since then.

On July 2, 2025, Petitioner requested a custody redetermination hearing (*i.e.*, bond hearing) before the Las Vegas Immigration Court. At the July 17, 2025 hearing before IJ Lindsy Roberts, Petitioner submitted evidence demonstrating that he was not a danger to the community nor a flight risk, including letters attesting to his positive character and strong community ties, particularly in terms of his commitment to his family.

The IJ found Petitioner was not a flight risk nor dangerous and granted Petitioner's request for release on bond in the amount of $5,000, with alternatives to detention at the discretion of

DHS. ECF No. 2-10. The next day, DHS filed an automatic stay of the IJ's order pending its appeal to the BIA under 8 C.F.R. § 1003.19(i)(2) by filing a Form EOIR-43. On July 29, 2025, DHS filed a notice of appeal with the BIA, arguing Petitioner is an "applicant for admission" subject to mandatory detention and ineligible for bond under 8 U.S.C. § 1225(b)(2). On September 30, 2025, the BIA issued a decision, sustaining DHS's appeal and vacating the IJ's bond order, and accordingly ordering Petitioner to continue being held without bond. ECF No. 2-16. In vacating the IJ's grant of bond for Petitioner, the BIA reasoned:

> During the pendency of this appeal, the Board issued a precedential decision holding that, based on the plain language of section 235(b)(2)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1225(b)(2)(A), Immigration Judges lack the authority over bond requests for aliens who are present in the United States without admission. See Matter of Yajure Hurtado, 29 I&N Dec. 216, 220-28 (BIA 2025). The Notice to Appear issued in this case demonstrates that the respondent is charged as inadmissible under section 212(a)(6)(A)(i) of the INA, 8 U.S.C. §§ 1182(a)(6)(A)(i). Pursuant to the Board's decision in [Hurtado], the Immigration Judge lacked authority to hear the respondent's request for a bond because the respondent is an applicant for admission and is subject to mandatory detention under section 235(b)(2)(A) of the INA, 8 U.S.C. § 1225(b)(2)(A), and the regulation at 8 C.F.R. § 235.3(b)(1)(ii).

ECF No. 14-5.

Petitioner had his Individual Merits Hearing on September 9, 2025, wherein the IJ considered witness testimony and documentary evidence, and ultimately granted Petitioner's relief application (Form EOIR-42B, Application for Cancellation of Removal and Adjust of Status for Certain Nonpermanent Residents). ECF Nos. 2-13, 2-14. On September 19, 2025, DHS filed an appeal of this grant of relief with the BIA and has continued to detain Petitioner since then. ECF No. 14-4.

Both Petitioner and his family members are struggling due to his detention. His life partner has struggled to make monthly payments without Petitioner's support as breadwinner and is suffering from depression and anxiety in her partner's absence. His eldest daughter too is continuing to undergo medical treatment without the support of her father. Since entering detention, Petitioner himself has suffered from chronic headaches, insomnia, and exhaustion, and alleges that his cell conditions—cold, damp, and unsanitary—have only exacerbated these harms.

## IV. LEGAL STANDARDS

### A. Preliminary Injunction

Pursuant to Federal Rule of Civil Procedure 65(b), a court may grant a preliminary injunction to prevent "immediate and irreparable injury." A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain such relief a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. at 20).

The Ninth Circuit uses a sliding scale variant of the Winter standard: the "serious questions" test. All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter). According to this test, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury, and that the injunction is in the public interest." Id. at 1135. Courts in the Ninth Circuit evaluate "these factors on a sliding scale, such that a stronger showing of one element may offset a weaker showing of another." Recycle for Change v. City of Oakland, 856 F.3d 666, 669 (9th Cir. 2017).

### B. § 2441 Petition for Writ of Habeas Corpus

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411

U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001); see also Demore v. Kim, 538 U.S. 510, 517 (2003). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." Yong v. I.N.S., 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

V. **DISCUSSION**

As a threshold matter, this Court converts Petitioner's Motion for Temporary Restraining Order into one for preliminary injunction. Respondents had notice, opportunity to respond, and ability to be heard as required under Rule 65. Fed. R. Civ. P 65(a). Because the standards for the two forms of relief are the same, and the Court finds there is no benefit in additional briefing, consideration of an injunction pending a decision on the merits of this matter, rather than more temporary relief, is warranted.

In the Ninth Circuit, whether to hold an evidentiary hearing or hear oral argument on a preliminary injunction is a matter of the district court's discretion. See, e.g., Stanley v. Univ. of S. California, 13 F.3d 1313, 1326 (9th Cir. 1994) (citations omitted) (refusal to hold a preliminary injunction hearing "is not an abuse of discretion if the parties have a full opportunity to submit written testimony and to argue the matter."). A court may rely solely on the briefing and affidavits of the parties where the urgent need for injunctive relief so requires. Int'l Molders' and Allied Workers' Local Union No. 164 v. Nelson, 799 F.2d 547, 555 (9th Cir. 1986).

Here, the parties have not requested oral argument or an evidentiary hearing. See id. (noting the failure to request an evidentiary hearing may constitute waiver). Additionally, the Court finds there are no disputes of fact material to the request for preliminary relief that would necessitate an

evidentiary hearing. Rather, the opposition by Respondents raises solely legal issues, and this Court has heard oral arguments on these issues from Respondents' counsel in multiple related habeas matters.[5] For those reasons, and in light of the urgent need for injunctive relief where Petitioner's liberty is at stake, the Court finds a preliminary injunction ruling without a hearing is warranted in this case.

### A. Jurisdiction

Respondents first assert the Court lacks jurisdiction over Petitioner's habeas challenge to the lawfulness of his detention by Respondents. As this Court has previously ruled, and which is incorporated by reference herein, Respondents' arguments are foreclosed by Ninth Circuit and Supreme Court precedent. See Vazquez, 2025 WL 2676082, at *7-9; Roman, 2025 WL 2710211, at *5. The Court has habeas jurisdiction to review Petitioner's challenge to the lawfulness of his detention, because the relevant jurisdiction stripping provisions of the INA, 8 U.S.C. §§ 1252(a), (b)(9), (g), and (e) do not apply, as discussed and held by the Court in granting habeas relief to similarly situated petitioners, which the Court fully incorporates by reference and applies here. See Vazquez, 2025 WL 2676082, at *7-9; Roman, 2025 WL 2710211, at *5.

### B. Administrative Exhaustion

The Court fully incorporates by reference its prior finding that administrative exhaustion is excused as futile. See Herrera, 2025 WL2481792, at *7-8; Vazquez, 2025 WL 2676082, at *9-10. In addition, to the extent Respondents seem to argue that Petitioner has not exhausted all administrative remedies as he has not yet filed a brief to the BIA in response to DHS's appeal from the IJ's grant of cancellation of removal, the Court rejects that argument as irrelevant to exhaustion of administrative remedies as they relate to Petitioner's unlawful detention. The BIA has issued its decision on the issue of bond, concluding the administrative process with respect to Petitioner's detention, and suggesting that Petitioner must await a "final decision on the merits" of removability improperly conflates removal proceedings with the matter actually before this Court: the legality of Petitioner's detention under § 1225(b)(2).

### C. Preliminary Injunction

---

[5] Supra note 1.

1    The Court now turns to the analysis of Petitioner's entitlement to preliminary relief under
2    the Winter factors.

### i. *Likelihood of Success or Serious Questions*

First, the Court finds Petitioner has satisfied the most important Winter factor: he is likely to succeed on the merits of his Petition for Writ of Habeas Corpus, because § 1226(a), not § 1225(b)(2), applies to him, and therefore his detention without bond violates the INA. See Matsumoto v. Labrador, 122 F.4th 787, 804 (9th Cir. 2024) (Likelihood of success on the merits is the most important factor in a preliminary injunction analysis); see also Baird v. Bonta, 81 F.4th 1036, 1042 (9th Cir. 2023) (likelihood of success is especially important where a plaintiff seeks a preliminary injunction because of an alleged constitutional violation). The Court fully incorporates by reference its reasoning and holding regarding the statutory question from Vazquez. WL 2676082, at *11-22. Again, the Court rejects Respondents' statutory interpretation, and finds Petitioner is detained under § 1226(a).[6,7]

Respondents assert the Court should afford substantial weight to the BIA's statutory reading in Hurtado, and by extension, the BIA's September 30, 2025 decision reversing Petitioner's bond order pursuant to Hurtado. The Court's task after the Supreme Court's decision in Loper Bright "is to evaluate the statute independently under Skidmore v. Swift & Co., 323 U.S. 134

---

[6] Incorporating by reference its reasoning and holding regarding the due process challenges to the automatic stay under 8 C.F.R. § 1003.19(i)(2) from Herrera, 2025 WL 2581792, at *8-13, the Court finds that Petitioner's continued detention pursuant to the automatic stay *was* a violation of due process; however, the Court finds that the automatic stay can no longer serve as a basis for detention in light of the BIA's September 30, 2025 decision sustaining DHS's appeal and ordering Petitioner's continued detention without bond. For that reason, the Court only addresses the lawfulness of Petitioner's continued detention without bond pursuant to § 1225(b)(2), and the BIA decision vacating the IJ's bond order based on Hurtado, as the basis for Petitioner's ongoing detention.

[7] Petitioner also challenges his continued detention after being granted cancellation of removal as violative of due process. The Court notes that the issue appears to be one of first impression: whether DHS can continue to detain someone under § 1225 after there has been a cancellation of removal decision on the merits and the government appeals that determination, or whether an immigration judge's grant of cancellation of removal concludes the removal proceedings for purposes of detention, which is authorized only during the pendency of removal proceedings. Existing case law appears to address the mirror scenario, *i.e.*, the question of what detention scheme governs the pendency of appeal when a *petitioner*—in comparison to the government in the instant case—appeals their order for removal. Cf. Prieto-Romero v. Clark, 534 F.2d 1053, 1062 (9th Cir. 2008) (finding that a noncitizen's detention was governed by § 1226(a), not § 1231(a), for the duration of judicial review of his removal order and until a final order was entered denying his petition for review). However, the Circuit has not decided whether removal proceedings in this scenario would be considered pending for the purposes of authorizing mandatory detention under § 1225(b)(2). Because the Court finds that Petitioner is detained under § 1226, not § 1225(b)(2), it need not reach this question in the instant Order. However, the Court will take into account the IJ's grant of cancellation of removal in addressing Petitioner's due process challenge to his detention.

1  (1994), giving 'due respect,' but not binding deference, to the agency's interpretation." Lemus-
2  Escobar v. Bondi, 140 F.4th 1079, 1095 (9th Cir. 2025) (applying Skidmore deference to a decision
3  by the BIA) (citing Loper Bright Enters. v. Raimondo, 603 U.S. 369, 413 (9th Cir. 2024)).

4        Under Skidmore, the weight to be afforded to an agency's interpretation by a federal court
5  depends "upon the thoroughness evident in its consideration, the validity of its reasoning, [and] its
6  consistency with earlier and later pronouncements." Skidmore, 323 U.S. at 140. The Court does
7  not find the BIA's reasoning in Hurtado valid for all the reasons discussed by this Court in Vazquez.
8  WL 2676082, at *11-16. Moreover, Hurtado is inconsistent with decades of agency practice and
9  departs from its own decision designated as precedential as recently as August of this year. See
10 Matter of Akhmedov, 29 I. & N. Dec. 166 (BIA 2025) (stating unequivocally that a noncitizen
11 who entered the country without inspection in January 2022 was detained pursuant to 8 U.S.C.
12 §1226(a)); id. at 116 n.1 (on August 4, 2025, the Attorney General designated Akhmedov "as
13 precedent in all proceedings involving the same issue or issues."). Accordingly, this Court finds
14 the BIA's new interpretation of § 1225(b)(2) in Hurtado is unpersuasive and should be afforded no
15 weight under Skidmore—and for the same reason, the Court will not defer to the BIA's decision
16 reversing Petitioner's bond order pursuant to Hurtado. See also Murillo-Chavez v. Bondi, 128
17 F.4th 1076, 1087 (9th Cir. 2025) (noting that after Loper Bright, courts may only look to agency
18 interpretation as persuasive and "may not defer to an agency interpretation of the law simply
19 because a statute is ambiguous."). As a result, the Court finds Petitioner likely to succeed on the
20 merits of his Petition because § 1226(a), not § 1225(b)(2), applies to him, regardless of the BIA's
21 decision to sustain DHS's appeal of the bond order.

22       **ii.** *Irreparable Harm*

23 The next factor requires a showing "that irreparable harm is likely, not just possible" in the
24 absence of an injunction. Alliance for the Wild Rockies, 632 F.3d at 1131. Petitioner clearly faces
25 irreparable harm in the absence of a judicial intervention. "It is well established that the deprivation
26 of constitutional rights 'unquestionably constitutes irreparable injury.'" Melendres v. Arpaio, 695
27 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). Thus, it follows
28 "inexorably" from this Court's conclusion that Petitioner is unlawfully detained, as § 1226(a)

governs his detention—such that Petitioner would continue to be deprived of his physical liberty in violation of procedural and substantive due process in the absence of intervention—that Petitioner has carried his burden as to irreparable harm. Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017). The Ninth Circuit has further recognized, in concrete terms, the irreparable harms "imposed on anyone subject to immigration detention (or other forms of imprisonment)." Id. In the absence of relief, "harms such as these will continue to occur needlessly on a daily basis." Id.

### iii. *Balance of Equities and Public Interest*

The remaining two factors for a preliminary injunction—the balance of equities and public interest—"merge" when the government is the opposing party. Baird v. Bonta, 81 F.4th 1036, 1040 (9th Cir. 2023) (quotations omitted). When "the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." Hernandez, 872 F.3d at 996 (quoting Stormans, Inc. v. Selecky, 586 F.3d 1109, 1139 (9th Cir. 2009)). The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion in finding the balance of hardships weighed in favor of plaintiffs who credibly alleged that the government was violating the INA).

The harm to the government here is minimal. The Court is simply ordering a recognition of the IJ's bond hearing determination—a bond hearing process which is contemplated by the regulations and is a part of the government's normal operations in any event. Moreover, it is DHS's new reading of the INA which upends decades of consistent agency practice, and subjects millions of individuals to mandatory detention, that is creating the significant fiscal and administrative burden on the government. However, this is a burden of its own choosing.

Additionally, the Court finds Petitioner's requested preliminary injunction is minimally burdensome on the government, as it merely preserves the status quo *ante litum*. The "status quo *ante litem*" does not mean that the status quo is any situation that precedes a lawsuit. Instead, "[t]he status quo is the last uncontested status which preceded the pending controversy." Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804, 809 (9th Cir. 1963). Here, the Court finds the status quo

*ante litum* is preserved by enforcing the IJ's July 17, 2025 bond order, prior to DHS' invocation of the automatic stay that this Court has held is unconstitutional, and prior to the BIA's erroneous decision in Hurtado and reversal of the IJ's bond order pursuant to Hurtado.

In contrast, the hardships faced by Petitioner and the public interest in issuing an injunction weigh strongly in his favor. Not only has Petitioner developed health issues while in detention, but detention has separated Petitioner from his family, employment, and community and imposed increased financial, medical, and emotional burdens on his partner, children, and grandchild. Hernandez, 872 F.3d at 996 ("in addition to the potential hardships facing [the plaintiff] in the absence of the injunction, the court may consider the indirect hardship to their friends and family members) (quotation marks and citation omitted). And because the Court has found it is likely that Respondents are unlawfully detaining Petitioner under § 1225(b)(2), "neither equity or the public interest are furthered" by allowing Respondents' violation of the INA to continue—quite the opposite. Galvez, 52 F.4th at 832; Hernandez, 872 F.3d at 996 ("The public interest benefits from an injunction that ensures that individuals are not deprived of their liberty and held in immigration detention because of . . . a likely unconstitutional process.").

As such, this Court finds the balance of the equities and public interest "tip sharply towards" Petitioner. All. For the Wild Rockies, 632 F.3d at 1127. Therefore, even under a lesser showing that Petitioner has raised only "serious questions going to the merits" of his challenge to his detention under the INA, Petitioner is entitled to a preliminary injunction.

**D. Bond**

Under Federal Rule of Civil Procedure 65(c), a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (2009) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, 'the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" Id. (citation

modified) (quoting Jorgensen, 320 F.3d at 919). Respondents do not argue that Petitioner's release pursuant to the IJ's order would be costly, so the Court declines to set bond beyond the amount imposed by the IJ.

### VI.    CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Petitioner's Motion (ECF No. 2) is **GRANTED**:

**IT IS FURTHERED ORDERED** that Respondents are **ENJOINED** from continuing to deny Petitioner release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2).

Respondents are **FURTHER ORDERED** to release Petitioner from ICE custody by **5:00 p.m. on November 7, 2025**. Petitioner shall be subject to the bond and other conditions imposed by the IJ in the July 17, 2025 order.

**IT IS FURTHER ORDERED** that the parties shall file a joint status report on or before **November 11, 2025** confirming that Petitioner has been released in compliance with this Order.

**IT IS FURTHER ORDERED** that Petitioner shall have until **12:00 p.m. on November 18, 2025,** to satisfy the bond conditions. If he does not satisfy them, he will be subject to rearrest and detention.

**DATED:** November 7, 2025.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**